**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2024**

# In the Court of Appeals of Georgia

A24A0201. HIGH WEST, LLC v. REESE.

WATKINS, Judge.

Michelle Reese alleges that she was seriously injured during her appointment at a beauty salon when a wall-mounted hairdryer detached from the wall and fell and struck her. She filed suit for damages against various defendants, including the owner of the leased premises, High West, LLC. The trial court denied HighWest's motion for summary judgment. For the reasons that follow, we reverse that ruling.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant."[1] So viewed, the record shows that High West owns the

---

[1] (Citation and punctuation omitted.) *Savannah State Univ. Foundation, Inc. v. Lewis*, 370 Ga. App. 180 (895 SE2d 525) (2023).

property at issue, which is next door to the chiropractic business of High West's sole member Kenneth Boscher. In May 2020, High West and Alicia Marston entered into a commercial lease for the property to be used for the purpose of "beauty shop/dread locks." Marston was the sole member of Luv Dem Locks, LLC ("LDL"), and at all relevant times, was the only one working at the salon.

Marston purchased the hairdryer, which was attached to a metal arm that would extend from the wall, for use in the salon. Because she did not know anyone who could install the hairdryer, however, she asked Boscher if he knew anyone who did that type of work. Boscher referred her to Steve Bearden, a "handyman" that Boscher had used for repairs on his various rental properties. Boscher did not require Marston to use Bearden.

Marston contacted Bearden, and he installed the hairdryer shortly after Marston took possession of the premises in May 2020. Marston inspected the hairdryer following its installation, and it appeared to be installed properly. However, approximately two months later, as Marston was attempting to position Reese under the dryer, the arm detached from the wall. Following that incident, Bearden returned

to the salon and reinstalled the hairdryer, this time attaching it to a support beam in the wall rather than mounting it directly to the drywall.

Reese sued High West (among others), alleging that it breached its duties as a premises owner under OCGA § 51-3-1.[2] High West moved for summary judgment, asserting that, pursuant to OCGA § 44-7-14, it was an out-of-possession landlord and not liable to third persons for the use of the property by its tenant. Following oral argument, the trial court denied High West's motion, finding that a question of fact existed as to whether High West had fully parted with possession of the property. The trial court reasoned that, under the terms of the lease, High West retained the right to inspect, repair, and maintain the premises and Marston had to obtain High West's written permission before making any alternations, physical additions, or

---

[2] Reese also asserted in the complaint that High West was liable under a theory of respondeat superior. High West argued that it was entitled to summary judgment under this theory because the undisputed evidence showed that High West did not hire anyone to mount the hairdryer. Reese did not address this claim in her response to the summary judgment motion, and the trial court did not address it in its order. "In response to a summary judgment motion, the non-movant may not rest on generalized allegations, but must come forward with specific facts to show that there is a genuine issue for trial." *Lane v. Ken Thomas of Ga., Inc.*, 233 Ga. App. 15, 17 (2) (503 SE2d 94) (1998) (citation and punctuation omitted). Reese presented no evidence that Bearden was an employee of High West.

improvements to the premises. Moreover, High West was aware the hairdryer was to be installed, gave permission for its installation, and recommended Bearden.

The trial court additionally found that a question of fact remained as to whether High West would have discovered that the hairdryer was not properly installed if it had exercised ordinary care under OCGA § 51-3-1 by performing inspections as required by the lease. After the trial court entered a certificate of immediate review, we granted High West's application for interlocutory appeal. This appeal followed.

1. On appeal, High West argues that the trial court erred in denying its motion for summary judgment because there was no evidence that it retained possession of the premises leased to Marston, which was an essential element of Reese's premises liability claim.

OCGA § 51-3-1 sets forth the general law regarding premises liability. It provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

However, OCGA § 44-7-14 governs the tort liability of out-of-possession landlords, providing:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

"OCGA § 44-7-14 and OCGA § 51-3-1 (the Code section governing premises liability) are mutually exclusive sources of liability."[3]

Under the lease, High West had "the right of access to [the] Property for inspection, repairs and maintenance during reasonable hours." The lease further provided that Marston would "not make or allow to be made any alterations, physical additions, or improvements in or to [the] Property without first obtaining [High West's] prior written consent."

Finally, the "Repairs and Maintenance" section of the lease provided that High West would keep and repair certain designated items, including the "Heating

---

[3] *Williams v. Kasulka Properties, LP*, 370 Ga. App. 653, 654 (2) (a) (898 SE2d 843) (2024).

system," "Plumbing system," "Air conditioning system," and "Electrical systems/fixtures." The provision continued: "Any item not mentioned herein but existing on Property (other than furniture, fixtures and equipment of Tenant shall be maintained by: *[Check one. The box not marked shall not be a part of this Agreement.]*"[4] The box for "Tenant" is then selected.

Although Reese argues in her response brief that the lease required High West "to keep fixtures like the one that allegedly struck [her] 'in good working order and repair[,]'" the only reasonable interpretation of the lease is that Marston agreed to maintain her own "furniture, fixtures and equipment," as well as fixtures that were not specifically designated as High West's responsibility.[5] While the lease gave Reese the right of access, it restricted that right to "inspection, repairs, and maintenance

---

[4] (Punctuation including the missing closing parenthesis in original.)

[5] See *Eckerd Corp. v. Alterman Properties, Ltd.*, 264 Ga. App. 72, 77 (2) (589 SE2d 660) (2003) ("Ambiguity exists when the language may be fairly understood in more than one way; language is unambiguous if it is capable of only one reasonable interpretation.") (citation and punctuation omitted).

during reasonable hours." Under these terms, "there is no evidence that [High West] contractually undertook to remain in possession of any parts of the premises."[6]

We hold that the evidence offered by Reese was insufficient to create an issue of fact as to whether High West was an out-of-possession landlord. As this Court has repeatedly held, "[t]he landlord's retention of the right to inspect the leased premises does not evidence such dominion and control of the premises so as to vitiate landlord's limited liability under OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1."[7] The evidence is also undisputed that Marston did not make any requests to High West for service or repairs, that Boscher did not conduct any inspection of the premises between the time the lease started and the date of the alleged injury, and that Marston spoke to Boscher about the hairdryer only to ask for a referral for an installer. Further, the installer was a handyman and not one of Boscher's employees.

---

[6] (Citation and punctuation omitted.) *Savannah State Univ. Foundation*, 370 Ga. App. at 183.

[7] (Citation and punctuation omitted.) *Ray v. Smith*, 259 Ga. App. 749, 751 (1) (577 SE2d 807) (2003).

As an out-of-possession landlord, High West "may be liable for failure to repair under OCGA § 44-7-14 only if [it had] actual or constructive knowledge of the dangerous condition. "[8] Reese did not present any evidence that High West knew or should have known that the hairdryer was not installed properly or otherwise created a hazardous condition.

2. Based on our conclusion in Division 1 that High West was an out-of-possession landlord, OCGA § 51-3-1 does not apply. Thus, the trial court also erred in finding that a question of fact existed as to whether High West failed to exercise ordinary care in keeping the premises safe under that provision.

For these reasons, we reverse the trial court's denial of High West's motion for summary judgment.

*Judgment reversed. Doyle, P. J., and Hodges, J., concur.*

---

[8] *WCE Holdings B, LLC v. Lewis*, 363 Ga. App. 29, 32 (870 SE2d 522) (2022).